**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02047-NYW

DENNIS P. HARPER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Plaintiff Dennis P. Harper's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated March 24, 2015 [#18], this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). *See* [#18]. The court has carefully considered the Complaint [#1, filed July 23, 2014], Defendant's Answer [#6, filed Dec. 1, 2014], Plaintiff's Opening Brief [#10, filed Jan. 28, 2015], Defendant's Response Brief [#11, filed Feb. 27, 2015], Plaintiff's Reply Brief [#14, filed Mar. 13, 2015], the entire case file, the administrative record, and applicable case law. For the following reasons, I respectfully

**REVERSE** the Commissioner's decision and **REMAND** for further consideration, on the limited issue of limitations, if any, posed by Plaintiff's social functioning.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB under Title II of the Act on February 18, 2011, and an application for SSI under Title VI of the Act on April 10, 2012. *See* [#7-2 at 69]. After initial and reconsideration denials, a video hearing was held before an Administrative Law Judge ("ALJ") on October 31, 2012. The ALJ issued a hearing decision on November 19, 2012, which denied the application for disability benefits at the last step of the five-step sequence for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps).

At step one, the ALJ determined that Mr. Harper has not engaged in substantial gainful activity since July 27, 2009, the alleged onset date of his disability. [#7-2 at 71]. At step two, the ALJ found that Mr. Harper "has the following severe impairments: Residuals of right wrist fusion and right little finger fracture; and arthritis in right knee." [#7-2 at 71]. The ALJ found that Mr. Harper's "medically determinable mental impairments of affective disorder and alcoholism do not cause more than minimal limitations in [his] ability to perform basic mental work activities and are therefore non-severe." [#7-2 at 71]. At step three, the ALJ held that Mr. Harper's musculoskeletal impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [#7-2 at 74]. At step four, the ALJ concluded that Mr. Harper was unable to perform any past relevant work (including as a pipe fitter, plumber supervisor, mine mechanic, and heating and air conditioning technician) because the demands of his past relevant work exceed his residual functional capacity. [#7-2 at

2

82].   At step five, the ALJ determined that considering Mr. Harper's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform, and therefore determined that a finding of "not disabled" was appropriate.  [#7-2 at 82-83].

On June 24, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner.  *See* [#7-2 at 2]; 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993).  Plaintiff filed this action on July 24, 2014.  *See* [#1].   The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

## LEGAL STANDARDS

### I.   Standard of Review

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole.  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th

3

Cir. 1992) (internal citation omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## II.    Social Security Disability Appeal Process

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. §§ 416(i), 423(a)(1).  Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.  "Step one requires the agency to determine whether a claimant is 'presently engaged in

substantial gainful activity.'" *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).  Step two requires the agency to consider whether a claimant has "a medically severe impairment or impairments." *Allen*, 357 F.3d at 1142.  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). At step three, the ALJ considers whether a claimant's medically severe impairments "meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

If the claimant's impairments are not equivalent to a listed impairment, at step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity (RFC) and compare the RFC to the claimant's past relevant work.  The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.  "The claimant bears the burden of proof through step four of the analysis."  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and,

consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work) . . . .

If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
…

Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52.

## ANALYSIS

Mr. Harper objects to the ALJ's decision on four grounds: (1) the step two findings are not supported by substantial evidence; (2) the medical source opinions were improperly weighed; (3) the residual functional capacity assessment is not supported by substantial evidence where the commissioner did not consider the combined effects of all of Plaintiff's impairments; and (4) the finding that Plaintiff can perform alternate work is not supported by substantial evidence.

## I.      Plaintiff's Challenge of the Step Two Findings.

Plaintiff argues that the ALJ's finding in step two of the sequential evaluation process that Plaintiff's affective disorder was as non-severe impairment is not supported by substantial evidence because the ALJ failed to consider record evidence showing the severity of his disorder.  *See* [#10 at 8].  Defendant responds that any error in finding Plaintiff's mental impairments not severe was harmless because the ALJ went on to consider Plaintiff's mental impairments in assessing his residual functional capacity.  [#11 at 9].

In step two of the sequential evaluation process, the Commissioner must determine whether a claimant's impairments are "severe."   20 C.F.R. § 404.1520(c); 416.920(c).   An impairment is "severe" if it has "more than a minimal effect" on a claimant's ability to work. *Williams*, 844 F.2d at 751.   An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to do work.  20 C.F.R. § 404.1521; 416.921.   "The Supreme Court has adopted what is referred to as a 'de minimus' standard with regard to the step two severity standard: '[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)); *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

Here, the ALJ determined that Mr. Harper had the following severe impairments: residuals of right wrist fusion and right little finger fracture; and arthritis in his right knee.  [#7-2 at 71].  However, the ALJ found that Plaintiff's medically determinable mental impairments of affective disorder and alcoholism do not cause more than minimal limitations in his ability to perform basic mental work activities and are therefore non-severe.  [#7-2 at 71-72].  The ALJ acknowledged that Plaintiff's records and hearing testimony reflect that he has alleged that he experiences substantial mental limitations stemming from affective disorder (mood disorders and anger issues) and chronic alcoholism.  [#7-2 at 72].  Nevertheless, the ALJ found insufficient record evidence to reach a conclusion that Plaintiff experiences significant limitations in his

ability to mentally perform work-related activities as a result of these mental limitations.   [#7-2 at 72].

Plaintiff alleges that the ALJ erred at step two because the finding that Plaintiff's affective disorder was not severe was not supported by substantial evidence.   [#10 at 21]. Plaintiff points to evidence in the record showing that Plaintiff does not get along with other people and has ongoing anger issues, hostility issues, and a history of domestic violence.   [#10 at 8].   Plaintiff also points to a consultative psychologist's statement that Mr. Harper's depression and anger curtailed his productivity, contributed to an inability to complete projects, and impaired his ability to deal with coworkers.   [#10 at 8].   Plaintiff further points to an agency reviewing physician's statement that Mr. Harper's depression interfered with his ability to maintain attention and concentration and to interact appropriately with coworkers.   [#10 at 9]. On the basis of this evidence, Plaintiff argues that the medical opinion evidence and Plaintiff's treatment records make more than the required "de minimus" [sic] showing that Mr. Harper's affective disorder has more than minimal impact on his ability to perform basic mental work tasks.   [#10 at 9].

Defendant responds to Plaintiff's argument by pointing out that even if there was an error in the ALJ's findings at step two, that error would have been harmless because the ALJ did not conclude that Plaintiff was not entitled to benefits at step two and proceeded on in the process to evaluate all of Plaintiff's impairments, both severe and non-severe, in subsequent steps of the sequential evaluation process.   "An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ, as here, finds another impairment is severe and proceeds to the remaining steps of the evaluation." *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th

Cir. 2011) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008)); *see also Fulton v. Colvin*, --- F. App'x ---, No. 15-6054, 2015 WL 6847808, at *2 (10th Cir. Nov. 9, 2015) ("To the extent [claimant] asserts a step-two error in the ALJ's failure to assess whether his panic disorder with agoraphobia or avoidant personality disorder . . . were severe, such error was harmless because the ALJ found at least one other severe impairment at step two.") (internal citations omitted); *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013). Here, the ALJ found the mental impairments non-severe at step two, but found other severe impairments and advanced to step three. *See* [#7-2 at 71-74]. The ALJ did not disregard the mental impairments later in the sequential process, but addressed them in evaluating Plaintiff's residual functional capacity at step four. *See* [#7-2 at 74-81].

Nonetheless, the ALJ made findings at step two regarding the severity of Mr. Harper's mental impairments and his social functioning that are contradicted by the record evidence, without an adequate explanation for his ultimate conclusions. For example, the ALJ stated at step two that "the record reflects no evidence that the claimant pursued or initiated physical fights," that Mr. Harper has "the capacity to act independently and appropriately," and that his "chronic alcoholism appears to have not impaired his social functioning." [#7-2 at 73]. However, the Record shows that Mr. Harper was arrested for domestic violence and assault with a deadly weapon. [#7-7 at 2]; *see also* [#7-7 at 27]. Mr. Harper became irate and threatened his wife with a gun because he felt that she was playing music too loudly. [#7-7 at 2]. The record also reflects that Mr. Harper broke his finger when he hit his stepson during another domestic incident. [#7-2 at 99]. Regardless of whether these incidents occurred at work or at home, these incidents directly contradict the ALJ's statements at step two. While an error at step two in

properly assessing the severity of mental impairments might normally not constitute reversible error, the court finds that the lack of substantial evidence supporting the ALJ's conclusions about Mr. Harper's mental impairments at step two, coupled with the ALJ's improper weighing of medical source opinions regarding Mr. Harper's mental impairments later in the sequential evaluation process reflects the ALJ's overall failure to adequately and fully consider and address the record evidence regarding Mr. Harper's mental impairments.

II.   **Plaintiff's Challenge of Commissioner's Weighting of Medical Source Opinions.**

Plaintiff argues that the ALJ did not properly weigh medical source opinions for two reasons.   First, Plaintiff argues that the Commissioner improperly rejected the only medical opinion in the record regarding Plaintiff's manipulative limitations.   [#10 at 10].   Second, Plaintiff argues that the Commissioner improperly rejected both medical source opinions regarding Plaintiff's mental functional limitations.   [#10 at 12].

A.   **The Commissioner's Consideration of the Medical Opinion Regarding Plaintiff's Manipulative Limitations.**

A claimant's residual functional capacity is "the most he can do despite his limitations." 20 C.F.R. § 404.1545(a).   Between steps three and four of the sequential evaluation process, an ALJ assesses a claimant's residual functional capacity based on all the evidence in the record. 20 C.F.R. § 404.1545(a)(1); *see* 20 C.F.R. § 404.1520(a)(4) (noting that the ALJ assesses a claimant's residual functional between steps three and four).   An ALJ's residual functional capacity finding does not have to directly correspond to any medical opinion.   *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between a[] [residual functional capacity] finding and a specific medical opinion on the functional capacity in question.").

Plaintiff takes issue with the ALJ's failure to fully credit the determination of Dr. Ryan Otten, a consultative physician who performed a physical examination relating to Plaintiff's residual functional capacity in June 2011, that Plaintiff "could only rarely use his dominant right hand to perform the activities of grasping, gripping, fingering, handling, and feeling." [#10 at 10]; *see also* [#7-7 at 90]. Dr. Otten defined "rarely" as meaning "less than two hours total during a normal eight hour work day." [#7-7 at 90]. Dr. Otten, who is not Mr. Harper's treating physician, was the only physician who addressed this issue in the medical records before the ALJ.

The ALJ found that Mr. Harper was capable of occasional manipulative work with his right hand. [#7-2 at 74]. The ALJ noted that "occasionally means occurring from very little up to one-third of an 8-hour work day (cumulative, not continuous)." [#7-2 at 74 n.2]. The ALJ specifically stated that he "afforded substantial weight to the conclusions of Dr. Ryan Otten." [#7-2 at 78]. The only discounting the ALJ gave to Dr. Otten's opinion was that although Dr. Otten opined that Plaintiff would only rarely (for less than two hours total during a normal work day) be able to perform the activities of gripping, fingering, handling, and feeling with the right hand, the ALJ nonetheless concluded that "the limitation to occasional use of the right upper extremity sufficiently accommodates the claimant's impairments." [#7-2 at 79]. The ALJ based this finding on Plaintiff's demonstration both in his writing and by showing the ALJ at the hearing his ability to oppose his thumb and forefinger in a manner consistent with at most moderate handling limitations. [#7-2 at 79].

The court notes that Plaintiff's challenge here amounts to the difference between a finding by Dr. Otten that Mr. Harper could only use his right hand for less than two hours per

11

eight hour workday and the ALJ's ultimate conclusion that Mr. Harper could use his right hand for no more than two and two-thirds hours per eight hour work day.  The court disagrees with Plaintiff that the ALJ failed to give appropriate weight Dr. Otten's opinion.  Indeed, the ALJ specifically stated that he gave Dr. Otten's opinion "substantial weight."  [#7-2 at 78].  However, the ALJ reasonably discounted Dr. Otten's opinion on the basis of evidence in the record including that Mr. Harper had only slightly reduced grip strength and slightly reduced ranges of motion in his fingers and thumb.  *See* [#7-2 at 79]; [#7-7 at 89].  The ALJ also specifically noted that Mr. Harper's own statements about the activities he is able to do with his right (dominant) hand and that he was able to complete numerous disability forms in neat handwriting with his right hand.  *See* [#7-2 at 79, 94].   Where, as here, the ALJ applied the appropriate legal standard and reached a conclusion that is supported by substantial evidence, the court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation omitted).

### B.    The Commissioner's Consideration of the Medical Opinion Regarding Plaintiff's Mental Functional Limitations.

Plaintiff's next argument is that the ALJ erred in improperly rejecting the two medical source opinions in the record regarding his mental functional limitations.  [#10 at 12].  One of the two opinions is a consultative psychological examination performed on May 18, 2011 by Dr. Minette Doss, the examining physician.  [#7-7 at 75-83].  The second opinion is that of the agency reviewing physician, Dr. Ellen Ryan.  [#7-3 at 13-14].

### 1.      The ALJ's Consideration of Dr. Doss's Opinion

Plaintiff argues that the ALJ improperly discounted Dr. Doss's opinion because reliance on a patient's subjective reports is not a proper basis for disregarding a physician's opinion, the absence of a cognitive impairment is not a basis for discounting the limitations imposed by Plaintiff's Affective Disorder and Intermittent Explosive Disorder, and a medical source opinion must be evaluated under the applicable regulations, even if it addresses the ultimate issue of disability.  [#10 at 13-15].

### a.  The ALJ's Opinion

During the May 8, 2011 consultative psychological examination, Dr. Doss noted that Mr. Harper performed without any obvious cognitive impairment on an MMSE.  [#7-7 at 75].  Dr. Doss also noted that further informal screening of cognitive ability suggested average intelligence.  [#7-7 at 75].  Dr. Doss noted that Mr. Harper battles with alcoholism and double depression stemming from his tragic childhood during which he likely first began to be afflicted by Dysthymia.  [#7-7 at 75-76].  Dr. Doss stated that Mr. Harper now suffers from Dysthymia, a Major Depressive Disorder of a severe nature, and has anger control issues in the form of an Intermittent Explosive Disorder.  [#7-7 at 76].  Dr. Doss further noted that Mr. Harper has "quite low" emotional intelligence.   [#7-7 at 76].   Dr. Doss stated regarding Mr. Harper's unemployment that "mentally and emotionally, what keeps him from working is low mood and poor motivation."  [#7-7 at 77].  In making behavioral observations, Dr. Doss noted that Mr. Harper was "adequately alert and responsive at this evaluation," "appropriately conversant," and "fully participatory in the evaluation session."  [#7-7 at 78].  Mr. Harper "did not show any

extremes of emotion or affect," "was an easy person to interview," and had a mood and demeanor that was "serious and subdued."  [#7-7 at 78].

In the results of the evaluation section of the report, Dr. Doss again noted that Mr. Harper scored in the No Cognitive Impairment range on the MMSE and was "judged to be of average intelligence with no gross cognitive impairment."  [#7-7 at 79].   Nonetheless, Dr. Doss concluded the evaluation with the statements that Mr. Harper's mood disorder curtails him from initiating and following through on projects and his rage reaction may impair the ability to deal with coworkers and may precipitate a very poor response to authority.  [#7-7 at 81].  Dr. Doss thus stated that "[a]ll of these factors make for an individual who would probably not be successful in a work situation at this time." [#7-7 at 81].

The ALJ considered Dr. Doss's opinion and ultimately afforded it little weight.   [#7-2 at 79].  The ALJ noted that Dr. Doss had concluded that Plaintiff "would be unreliable on the job," that he might not always be aware of normal hazards in order to be able to take appropriate action, and that his mood disorder curtails him from initiating and following through on projects. [#7-2 at 79].  The ALJ found, however, that Dr. Doss's conclusions were unpersuasive because they were based on Plaintiff's subjective complaints and appear to overestimate the extent to which he suffers functional limitations.  [#7-2 at 79].  The ALJ provided several examples of Plaintiff's ability to function beyond the level described by Dr. Doss, including his MMSE score reflecting no cognitive impairment, his marriage and work history with no reports of ever being fired or laid off due to inability to get along with others.  [#7-2 at 79].  The ALJ also noted that Dr. Doss's determination of whether Plaintiff would be able to be "successful in a work situation" is an issue reserved for the commissioner.  [#7-2 at 80].  The ALJ explained that

"[w]hile a medical source statement is a medical opinion, the residual functional capacity is the adjudicator's ultimate finding as to what the claimant is able to do despite his limitations. [#7-2 at 80 (citing SSR 96-5p)].

### b.  Plaintiff's Attacks on ALJ's Opinion

Plaintiff first argues that the ALJ improperly discounted Dr. Doss's opinion because reliance on a patient's subjective reports is not a proper basis for disregarding a physician's opinion. [#10 at 13].  For this proposition, Plaintiff relies on a decision from this District, *Russ v. Colvin*, 67 F. Supp. 3d 1274 (D. Colo. 2014).  In *Russ v. Colvin*, the court determined that an ALJ had failed to provide adequate support for the weight it afforded to the opinions of a treating physician where the ALJ had given the opinion little weight on the ground that it was inconsistent with her own treatment notes and thus appeared to be based solely on the claimant's subjective complaints.  *Russ*, 67 F. Supp. 3d at 1277-78.  In reaching that conclusion, the court stated that "even where substantiated, the observation that a physician has relied on a claimant's subjective reports of her symptoms provides absolutely no basis for rejecting a medical source opinion." *Id.* at 1278 (citing *Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984).

This court finds *Russ v. Colvin* to be distinguishable from the facts at hand.  First, in *Russ*, the opinion that the ALJ discounted was that of a treating physician, whose opinion "is entitled to controlling weight when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.'" *Russ*, 67 F. Supp. 3d at 1278 (quoting 20 C.F.R. § 404.1527(c)(2)).  "Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in

20 C.F.R. § . . . 416.927.'" *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Second, in determining that the treating physician's conclusion was inconsistent with her treatment records, the ALJ in *Russ* cited to the entirety of the doctor's treatment notes without providing any specific reference to information contained therein that was inconsistent with her final conclusion.  *Russ*, 67 F. Supp. 3d at 1279.  The *Russ* court ultimately concluded that the ALJ's decision to discount the treating physician's opinion "lack[ed] an analysis specifically tied to the evidence in the record" and was "merely a conclusion in the guise of a finding" that did "not constitute substantial evidence in support of the disability decision."  *Russ*, 67 F. Supp. 3d at 1279.

In contrast to *Russ*, the medical opinion in dispute here is one of a consultative examining physician, which is generally entitled to less weight than that of a treating physician. *Jones v. Colvin*, 514 F. App'x 813, 819 (10th Cir. 2013) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."  Moreover, the ALJ pointed to specific portions of Dr. Doss's evaluation that contradicted her statement regarding Mr. Harper's inability to work.  *See* [#7-2 at 79].  In particular, the ALJ noted that Dr. Doss reported that Mr. Harper's performance on the MMSE was without cognitive impairment.  *See* [#7-2 at 79].  The ALJ also noted that Dr. Doss's conclusion that Mr. Harper would be unable to be successful in a work situation due to his anger issues was unsupported by the fact that he was capable of working for many years without any reports of being laid off or fired for failure to get along with others.  [#7-2 at 79].  Here, the ALJ's analysis is specifically tied to the evidence in record, and

the fact that the ALJ's determination to afford less weight to Dr. Doss's opinion to the extent that it was based in part on Mr. Harper's statements where the ALJ had also determined that Mr. Harper lacked credibility is not grounds for reversing the ALJ's decision. *See Butler v. Astrue*, 410 F. App'x 137, 142-43 (10th Cir. 2011); *Lopez v. Barnhart*, 183 F. App'x 825, 828-29 (10th Cir. 2006).

Furthermore, the court does not consider Plaintiff's argument that the absence of a cognitive impairment is not a basis for discounting the limitations imposed by Mr. Harper's Affective Disorder and Intermittent Explosive Disorder as grounds for reversal of the ALJ's determination. *See* [#10 at 14-15]. The court disagrees with Plaintiff's representation of the ALJ's findings on this point. In particular, the ALJ's basis for discounting Dr. Doss's opinion on Plaintiff's problems dealing with people, which were allegedly due to anger issues, was due to contradictory evidence in the record including Plaintiff's ability to successfully work in the past and remain married for 26 years despite anger issues and the fact that none of the doctors in the record noted witnessing his anger issues. [#7-2 at 79-80].

Finally, the court finds that Plaintiff's argument that a medical source opinion must be evaluated under the applicable regulations, even if it addresses the ultimate issue of disability, is not a basis for reversing the ALJ's determination in this case. *See* [#10 at 15]. After stating all of the reasons why he discounted Dr. Doss's opinion regarding Mr. Harper's ability to be successful in the workplace, the ALJ concluded by stating: "Further, whether a claimant would be able to 'successful in a work situation' is an issue reserved to the Commissioner." [#7-2 at 80]. Plaintiff states that this is an improper basis for discounting Dr. Doss's opinion. *See* [#10 at 15]. The court notes that the ALJ did not state that this was the sole basis for his decision to

17

discount Dr. Doss's opinion, and he previously stated several reasons for discounting her opinion that were correct under the law and supported by substantial evidence.   Accordingly, the ALJ's statement that the ultimate determination of a claimant's ability to be successful at work is one for the Commissioner is not a basis for finding error in the ALJ's decision to discount Dr. Doss's opinion.

### 2.      The ALJ's Consideration of Dr. Ryan's Opinion

Plaintiff argues that the ALJ erred in only giving "some weight" to the opinion of Dr. Ellen Ryan, the agency reviewing physician, on Mr. Harper's moderate limitations in concentration and social functioning. [#10 at 15].  The court finds that the ALJ erred in failing to explain its basis for failing to adequately address his rejection of Dr. Ryan's conclusion that Mr. Harper should be limited in his interactions with others in the workplace.

The ALJ's decision is largely consistent with Dr. Ryan's opinion, and the ALJ specifically stated that he afforded her opinion "some weight."  [#7-2 at 81].  The key distinction is that while Dr. Ryan opined that Mr. Harper needed less interaction with coworkers and the public, [#7-3 at 14], the ALJ did not explicitly state that a similar limitation should apply, *see* [#7-2 at 81].  The ALJ stated that he gave Dr. Ryan's conclusions "some weight" and that those conclusions included a finding that Plaintiff's allegations are "partially credible" and that despite his affective disorder and alcohol abuse, his activities of daily living indicate only mild to moderate impairments.  [#7-2 at 81 (citing Exhibit 2A)].  The ALJ explained that Dr. Ryan supported her conclusions by noting that although Plaintiff reported that he is a loner, he goes to AA meetings and group therapy several times a week.  [#7-2 at 81 (citing Exhibit 9F)]; *see also* [#7-3 at 14].  The ALJ ultimately concluded that the record only supports a finding of mild

impairments.   [#7-2 at 81].   While the court agrees that the Record supports the ALJ's determination that Plaintiff's cognitive functioning has mild impairments, at best, the court further includes that the ALJ did not fully develop the record on any limitations with respect to Plaintiff's social functioning, namely, his ability to appropriately interact with others.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."   *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).   The Tenth Circuit in *Lawton v. Barnhart* described the analysis required in the RFC as follows:

> The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

121 F. App'x 364, 374 (10th Cir. 2005) (quoting SSR 96-8p, 1996 WL 374184, at *7).   The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved.   *Id.*

Here, the ALJ explained that Dr. Ryan reached the conclusion that Mr. Harper's allegations are "partially credible," and that despite his affective disorder and alcohol abuse, his activities of daily living indicate only mild to moderate limitations.   [#7-2 at 81].   The ALJ did not, however, explain why he discounted, or even mention Dr. Ryan's finding that Mr. Harper needed less interaction with coworkers and the public.   While his ultimate conclusion may be appropriate, the ALJ failed to explain why he discounted the agency reviewing physician's finding regarding Mr. Harper's need for limited social interaction or whether he considered Mr. Harper's domestic issues in so finding.   To the extent that the ALJ found that this limited social

interaction was encompassed within his finding of a mild impairment, he should have so stated. Because there is an unexplained failure by the ALJ to point specifically to the basis for his rejection of Dr. Ryan's opinion, the court finds that the ALJ's rejection of that opinion is not supported by substantial evidence. *See Kimbrough v. Colvin*, No. 13-CV-03449-RM, 2016 WL 319208, at \*7 (D. Colo. Jan. 27, 2016) ("When an ALJ does not provide an explanation for rejecting medical evidence, *i.e.*, Dr. Cutter's proposed functional limitations, the Court cannot meaningfully review the ALJ's determination.").

Accordingly, the court finds that the ALJ's decision must be reversed to the extent that the ALJ failed to explain the basis for rejecting or failing to address Dr. Ryan's opinion regarding Mr. Harper's need for limited social interaction in the workplace and to the extent that the ALJ failed to adequately assess the record evidence regarding Mr. Harper's anger issues and social interactions at each step in the sequential evaluation process. Because the court remands on this basis, the court does not address Plaintiff's remaining arguments. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)     The court **VACATES** Defendant's denial of disability insurance benefits and supplemental security income; and

(2)      The court **REMANDS** to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g), for the limited purpose of considering any applicable limitations associated with Plaintiff's social functioning but no other issues.

DATED: February 24, 2016                    BY THE COURT:


                                            s/ Nina Y. Wang_____
                                            United States Magistrate Judge